## STUDER v. MOORE et al.
### No. 291.

Circuit Court of Appeals, Second Circuit.

May 24, 1946.

Bernard Cowen, of New York City, for appellant.

Herbert A. Einhorn, of New York City, for appellee.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This is the second appeal from the same judgment: the first we dismissed because, at the time it was taken, no judgment had been entered as to the defendant, Irving Trust Company. Studer v. Moore, 2 Cir., 153 F.2d 902. The complaint was dismissed as against that company on February 4th, and a new appeal was taken on March 27th. We now have jurisdiction, and may consider the case upon the merits.

The judgment summarily dismissed the complaint as against the defendant, Moore, for lack of jurisdiction over the subject matter, on the ground that it appeared from the allegations alone that the action was against the State of New York. The substance of the allegations is as follows. The plaintiff is a citizen of New Jersey, the Irving Trust Company is a bank incorporated under the laws of New York, and the defendant, Moore, is a citizen of New York and the chief fiscal officer of that state: its "Comptroller." On April 4, 1944, the Court of Chancery of New Jersey appointed the plaintiff the sole trustee under a deed of trust for the benefit of holders of first mortgage bonds of a New Jersey Railway Company, by an order entered in a suit to foreclose the mortgage, begun in March, 1875. On September 12, 1879, the properties of the railroad had been sold in foreclosure, and on June 12, 1880, there remained undistributed about $40,000, which one, Coe, then the only surviving trustee, deposited in a bank of the City of New York. On May 4, 1896, there remained of this deposit about $6,000, and, at some undisclosed time thereafter, the defendant, Irving Trust Company "by various mergers and consolidations of banks and trust companies became the successor in interest" of the bank in which Coe had deposited the money. On July 16, 1938, "the Irving Trust Company paid over said moneys to the person then acting as Comptroller of the State of New York"; and Moore "now has custody of said moneys." The plaintiff, as Coe's successor, prayed an adjudication that he was the "owner of the moneys, which were on deposit in the Irving Trust Company * * * and which were transferred to the Comptroller of the State of New York."

Section 127 of the New York Banking Law, Consol.Laws, c. 2, as it stood on July 16, 1938, provided that, on the tenth of each November, "every bank and every trust company shall pay over to the state comptroller for the purposes specified in the state finance law, all abandoned funds held by it which shall have become abandoned funds on or before the first day of July next preceding. * * * No action shall be maintained against any bank or trust company for the recovery of moneys paid over to the state comptroller pursuant to the [purposes] of this section." "Abandoned funds," were defined by subdivision 23 of § 2 of the same act to mean "all amounts which for a period of twenty-two years have remained unclaimed by the depositor or creditor entitled to receive the same." Subdivision four of § 85 of the

State Finance Law, Consol. Laws, c. 56, as amended in 1941, c. 521, provided that "a claim for any abandoned funds" might be filed with the Comptroller by "any person entitled to receive the same"; that the Comptroller should pass upon its validity; and that an appeal lay from his decision to the state supreme court. Subdivision six of the same section provided that the Comptroller should cover into the general treasury any "balance * * * in excess of the aggregate receipts * * * during the ten calendar years next preceding." This last provision was amended before this action was commenced, by § 95 of the State Finance Law which reserved only a "special fund" of $750,000, known as the "Abandoned Property Fund," and directed the Comptroller to cover any excess of "abandoned funds" into the treasury.

■ Since the plaintiff is the legal successor of Coe, and since by the "various consolidations and mergers" the Irving Trust Company made itself liable to all depositors of the banks with which it had consolidated, or had been merged, it became a debtor to Coe and to the plaintiff, as Coe's successor, except in so far as § 127 of the Banking Law gave it a valid defence. As we understand the plaintiff, he now asserts a cause of action against the Comptroller personally on the theory that that official received property, now belonging to him— Coe's deposit—which he refuses to surrender, and that this is a personal wrong which does not involve the state. When a bank pays the Comptroller under § 127 of the Banking Law, it will ordinarily do so by means of a credit, through which in turn the Comptroller will establish a credit in favor of the "Abandoned Property Fund." Theoretically, it might be possible to treat that credit as property held in trust for all depositors whose credits in the original bank are extinguished by § 127 of the Banking Law; and, indeed, subdivision four of § 85 of the State Finance Law does direct the Comptroller to pay depositors out of the fund. We should, however, hesitate long so to construe § 85; and, in the absence of contrary interpretation by the state courts, we tentatively hold that subdivision four of § 85 creates only a debt against the state, analogous to the depositor's original debt against his bank. The depositor can sue upon that debt only as the state law prescribes, and that law specifically limits him to the state court. The same result would follow, however, even though § 85 gave depositors a proprietary interest in the "Abandoned Property Fund"; for any such interest would arise only by fiat of the state law, and the depositor would be as much limited to the remedies which that law provided, as though his claim were only a debt.

■ However we construe § 85 of the State Finance Law, the district court had no jurisdiction of the cause of action at bar, on the theory that the Comptroller had taken over property belonging to the plaintiff which he unlawfully retains in defiance of law, and that this is a tort personal to himself, upon which he may be sued as an individual. True, such an action lies against a tax collector, who by duress has collected an unlawful tax (Atchison, Topeka & Sante Fe Railway Co. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436, Ann.Cas.1913C 1050), and against other state officials for the conversion of property (Tindall v. Wesley, 167 U.S. 204, 17 S.Ct. 770, 42 L.Ed. 137). Great Northern L. Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121, has apparently left this right untouched. But Coe never had any interest in the assets of the Irving Trust Company, and when that bank paid the Comptroller an amount equal to the sum standing to his credit upon its books, it did not surrender any property of Coe. Thus the Comptroller got nothing which belonged to Coe, and did Coe no wrong in availing himself of the credit so created in his favor. If § 127 of the Banking Law was unconstitutional, things stood as they had; Coe might sue the bank as its creditor, which was all he ever was; and the bank would have no defence. It could not set up its credit to the Comptroller as a payment to Coe; nor could Coe follow that credit except as the state law gave him the right to do so. If, on the other hand, § 127 of the Banking Law is constitutional, it is because, although it extinguished the bank's debt to Coe, the right against the "Aban-

doned Property Fund," which § 85 of the State Finance Law substituted, was "just compensation." If so, Coe was limited to the remedies provided by § 85, which did not include an action against the Comptroller. In any aspect, therefore, the Comptroller committed no tort against Coe, and it is unnecessary to consider how far the state's interest in the "Abandoned Property Fund" may be thought to be that of a sovereign.

Judgment affirmed.