UNITED STATES ex rel. WEINSTEIN et al.
v. BRESSLER et al.
No. 135, Docket 20437.

Circuit Court of Appeals, Second Circuit.
March 20, 1947.

404

Jess G. Schiffmann, Atty., Dept. of Justice, of Washington, D. C. (John F. Sonnett, Asst. Atty. Gen., Lester S. Jayson, Sp. Atty., of New York City, Joseph M. Friedman, Chief, War Frauds Civil Section, and J. Gregory Bruce, Atty., Dept. of Justice, both of Washington, D. C., and John F. X. McGohey, U. S. Atty., of New York City, on the brief), for the United States.

Louis Waldman, of New York City (Samuel Duker, of New York City, on the brief), for appellees.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

In United States ex rel. Brensilber v. Bausch & Lomb Optical Co., 2 Cir., 131 F.2d 545, affirmed by an equally divided court, 320 U.S. 711, 64 S.Ct. 187, 88 L.Ed. 417, we decided that fraud must be proved to sustain a recovery by an informer under the Informer's Act, 31 U.S.C.A. §§ 231–235, for conspiracy to secure 'payment of a false claim. United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443. We must now decide whether, assuming our previous decision to stand, it is fraudulent for contractors to submit by agreement uniform bids for a government contract after previously disclosing to government procurement officials the noncompetitive character of the prospective bidding.

The underlying facts were brought out by affidavits of the parties and, indeed, in substantial detail from those presented on behalf of the plaintiff. While some question is now made as to summary judgment, we do not see that there is any real dispute as to what took place. Hence we accept the complete statement made in the opinion below, D.C., 60 F.Supp. 676, to which we make reference for details, stating here only such facts as are necessary to present the issues of law involved.

The defendants are hat manufacturers and officials of labor unions representing the employees of such manufacturers. In 1941, defendant manufacturers submitted three separate sets of bids to the Army for the manufacture of Army hats, in February, June, and September. The June bids only form the basis of this action.

The February bids were originally submitted without agreement among the defendants. The Army procurement officials, however, thought that some of the bids submitted were too high and therefore awarded contracts for only a part of the hats desired. Thereafter the defendant Roberts, who was a labor union official, and some of the defendant manufacturers conferred with civilian and Army procurement officials. The conferees negotiated a price for the hats, and all the defendant manufacturers amended their bids to quote this price. Thereafter contracts were awarded for the remainder of the hats.

Because of his success in securing agreement among the parties in February, Roberts again conferred with a procurement official prior to the submission of the June bids. This official, one Becker of the Office of Production Management, told Roberts the quantity sought and the maximum price the Army would pay. Roberts, in turn, assured him that all the shops could be brought into line. As a result of this conference Roberts promoted the June bidding arrangement among all the defendant manufacturers. By this agreement the defendants allocated the total quantity sought among themselves, and each submitted a bid for his share at the maximum price Becker had set. This arrangement was not a secret one. Roberts had of course in effect formulated it with

Becker, and thereafter he disclosed it to an Army procurement official, Colonel Jones. Colonel Jones and one Rice, Becker's successor, recommended rejection of these identical bids, however; and only four of defendant manufacturers were awarded contracts in June.

In 1943, one Weinstein, acting on his own behalf and that of the United States, brought this suit against defendants. In it he alleged that in all three sets of transactions defendants had violated the Informer's Act, 31 U.S.C.A. §§ 231–235, and the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq. As violations of the former Act he alleged a conspiracy "to secretly fix arbitrary, noncompetitive, unfair, excessive, identical and fraudulent prices" in the bids submitted; to represent the bids as competitive; to secure contracts with them; and to collect fees under the contracts. In 1944, the United States, acting under 31 U.S.C.A. § 232(C), intervened and took over the conduct of this suit. In the District Court the United States abandoned the charges under the Sherman Act and all charges concerning the February and September bidding. A motion by the defendant labor union officials led to the summary judgment from which the appeal by the United States was taken. Since the judgment did not dispose of the case as against the defendant manufacturers, it was not a final order and was not appealable. Photometric Products Corp. v. Radtke, 2 Cir., 157 F.2d 849; Porter v. American Distilling Co., 2 Cir., 157 F.2d 1012. After argument, however, and on request of counsel, we deferred our consideration of the issues until final judgment was duly entered in favor of all the defendants and the appeal properly perfected.

 To prevail, the United States must prove fraud of some sort. Fraud implies a misrepresentation of material fact, either express or implied. United States v. Buckner, 2 Cir., 108 F.2d 921, 926, certiorari denied Buckner v. United States, 309 U.S. 669, 60 S.Ct. 613, 84 L.Ed. 1016; Krushew v. Meitz, 276 Mich. 553, 558, 268 N.W. 736, 737. We find neither here. Just as in United States ex rel. Brensilber v. Bausch & Lomb Optical Co., supra, there was no implied representation that defendant had not illegally conspired to exclude competition from the market, there was in this case no implied representation that the bids were competitive in price. Similarly there was no implied representation that the quantity bid on by each manufacturer was not determined according to an industry-wide agreement. The only representations to be implied from the bids were that the individual bidders were ready and able to produce hats according to the Army's specifications, and that they hoped to secure a contract to supply the number bid on at the price quoted. From what appears in the record, these representations were all true.

If defendants had intended to create a false impression that the bids were competitive, they would not have submitted identical bids. They would instead have arranged to bid at different prices, as the defendants in United States ex rel. Marcus v. Hess, supra, did. In that case some of the defendants by agreement submitted bids higher than those submitted by the contractors selected by the defendants as successful bidders. The high bidders thereby made false representations that they hoped to secure the contracts on which they bid. Although the Hess case is susceptible of varying interpretations, we believe that the presence of this fraudulent misrepresentation of material fact turned the decision against the defendants there. The activities of Roberts and the other defendants here in connection with the formulation and submission of the bids do not indicate any representation that the bids were competitive. On the contrary, they indicate that the government officials were kept cognizant of and in fact fostered the noncompetitive bidding arrangement. If our decision in United States ex rel. Brensilber v. Bausch & Lomb Optical Co., supra, is, as we think, unshaken by United States ex rel. Marcus v. Hess, supra, the Informer's Act has consequently not been violated.

By their bidding agreements defendants may have violated other laws of the United States. Some of the defendants here

406

have indeed pleaded nolo contendere to Sherman Act indictments found against them. Whatever remedies the United States may have outside the Informer's Act, however, are here irrelevant.

Affirmed.