## CLARK v. TAYLOR et al.
### No. 257, Docket 20580.

Circuit Court of Appeals, Second Circuit.
Sept. 22, 1947.

As Revised Oct. 15, 1947.

FRANK, Circuit Judge, dissenting.

---

A. Walter Socolow, of New York City (Alexander D. Diamond, of New York City, on the brief), for defendant-appellant.

David Schwartz, Atty., Dept. of Justice, of Washington. D. C. (Donald C. Cook, Dir., Office of Alien Property, of Washington, D. C., Harry LeRoy Jones and M. S. Isenbergh, Sp. Assts. to the Atty. Gen., James L. Morrisson and David E. Feller, Attys., Dept. of Justice, both of Washington, D. C., and John F. X. McGohey, U. S. Atty., of New York City, on the brief), for plaintiff-appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

At the outset we must determine the finality, and hence the appealability, of an order holding that a receiver acting for the asserted owner of a chose in action, in dispute among the various parties to the action, has no title thereto. The chose in action here involved is a sum of money allegedly owed as royalties by the American Society of Composers, Authors and Publishers to a similar Austrian organization, AKM,[1] under a contract between the two. On June 12, 1941, defendant-appellant Propper was appointed temporary receiver of the assets of AKM located in the State of New York, an appointment made permanent by the state court on July 29. Meanwhile on June 14, the President of the United States by Exec. Order 8785, 12 U.S. C.A. § 95a note, 3 CFR, 1941 Supp., p. 225, 6 F.R. 2897, prohibited transfer of Austrian property unless authorized by the Secretary of the Treasury. The Secretary has not authorized any transfer of AKM assets. On July 29, 1941, Propper sued Taylor, representing ASCAP, in the New York state courts to recover the sums allegedly due. This suit has not yet been finally adjudicated. On September 4, 1943, the Alien Property Custodian, plaintiff's predecessor, vested in himself all assets held by ASCAP for the Austrian organization. ASCAP refused the Custodian's demand for a turnover of the sums allegedly due, and the Custodian brought this suit in the District Court, against both Taylor, as president of ASCAP, and Propper, to secure the turnover and a declaration that Propper had no right to the fund. On plaintiff's motion the District Court granted summary judgment against Propper on the ground of his lack of right or title to the funds as state court receiver and also denied his cross-motion for judgment. D.C.S.D.N.Y., 70 F.Supp. 202. From this order Propper has appealed. The action still remains pending against Taylor, who has not taken part in the presentation of the appeal.

The complaint is in three counts, of which the first and third involve matters not germane here and the second only is before us. Therein plaintiff alleges at some length the circumstances of the contract between AKM and ASCAP, the collection of royalties by the latter, and the order of taking by the Custodian. It also sets forth the appointment of Propper as state court receiver, and alleges by way of conclusion his lack of title or interest in the funds through such appointment. Defendant Taylor has answered admitting all the facts here pertinent, including the collection

---

[1] ASCAP is an unincorporated association; AKM was organized under Austrian law as a registered cooperative society with limited liability. Before June 12, 1941, AKM had been liquidated in Austria.

of unspecified royalties, but alleging as a separate defense the collection by AKM of royalties owed ASCAP "in excess of many thousands of dollars," leaving a large unpaid balance in favor of ASCAP. Not only does this present an important and extensive issue of fact—and perhaps also an issue of law as to the right of setoff—but the references in the affidavits to the extensive and bitterly fought state suit brought by Propper for these funds, contested by ASCAP, with several trips to the Appellate Division and one to the Court of Appeals of the State, and with trial not yet had, show its controlling importance in the final disposition of this litigation.

Before filing his motion for judgment, Propper also answered, admitting his appointment and the existence of royalties due from ASCAP to AKM, and then extensively contested the plaintiff's allegations in opposition to his right to the funds as receiver. Such claim of right presents the legal issue decided by the District Court upon these conflicting motions. As the court pointed out, the facts as to it are not at all in dispute and are quickly stated as above. The substantial legal points were two: (1) whether a temporary receiver under the controlling New York law, N.Y.Civil Practice Act, § 977-b, takes title or has merely a right to possession, and (2) if only the latter, whether the Executive Order cited above prevented the devolution of title on the appointment of Propper as permanent receiver. The District Court decided both these issues against Propper.[2]

■ Upon this record it seems to us clear that this is the case of suit by the appropriate government official against two rival claimants to the same fund or chose in action, and that there will be a final judgment only when there is a decision as to the existence and ownership of the property in dispute. The conclusion that a fiduciary claiming to represent one of the claimants does not have formal legal title to the assets in question is not a final judgment upon the important and central point in dispute. Hence the case seems to us to fall within the authority of several similar cases where we have held nonappealable orders affecting some, but not all, parties to the same dispute. Porter v. American Distilling Co., 2 Cir., 157 F.2d 1012; Photometric Products Corporation v. Radtke, 2 Cir., 157 F.2d 849; United States ex rel. Weinstein v. Bressler, 2 Cir., 160 F.2d 403, 405; Studer v. Moore, 2 Cir., 153 F.2d 902; Atwater v. North American Coal Corporation, 2 Cir., 111 F.2d 125; Hohorst v. Hamburg-American Packet Co., 148 U.S. 262, 13 S.Ct. 590, 37 L.Ed. 443.[3]

■■ The parties here, in an endeavor to sustain appealability, suggest that the facts in connection with the receiver's right are different from those involving the existence of the original claim. But as has often been stressed, no complete identity of facts can be required or else every claim by different persons or dealing with differing steps in a litigation will always involve a different "cause of action." The theory adopted in the new rules, including the pertinent rule here, 54(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, has been that the "transaction" or "occurrence" is the subject matter of a claim, rather than the legal rights arising therefrom; additions to or subtractions from the central core of fact do

---

2 Other issues raised by Propper involved the jurisdiction of the court, the question of full faith and credit to be accorded to the state decree, and the claimed deprivation of vested rights of property without due process of law or due compensation—matters not discussed by the District Court.

3 The general principle is also stated in several other recent decisions, e. g., Petrol Corporation v. Petroleum Heat & Power Co., 2 Cir., 162 F.2d 327; Audi Vision, Inc., v. RCA Mfg. Co., 2 Cir., 136 F.2d 621, 147 A.L.R. 574; Libbey-

Owens-Ford Glass Co. v. Sylvania Industrial Corporation. 2 Cir., 154 F.2d 814, certiorari denied Sylvania Industrial Corporation v. Libbey-Owens-Ford Glass Co., 328 U.S 859, 66 S.Ct. 1353, 90 L. Ed. 1620. In the case of Zarati S. S. Co. v. Park Bridge Corporation, 2 Cir., 154 F.2d 377, the court divided as to whether the rights and claims of the parties there pressed were "intertwined"; they were not, as here, so intertwined that one depended on a finding of the absence of the other.

not change this substantial identity so as to support piecemeal appeals. See Petrol Corporation v. Petroleum Heat & Power Co., 2 Cir., 162 F.2d 327, and cases and authorities there cited. Here the central fact concerns the royalties collected by ASCAP for AKM and by AKM for AS-CAP and the legality and fact of offset between them. That AKM's right or title may have devolved to Propper does not change or lessen the importance of this question. It may add, and apparently here has added, another legal issue of some importance; but such an issue may arise as to any parties to a dispute. Thus here conceivably a question might arise as to the capacity and right of Taylor to sue for ASCAP; certainly a question would arise if any attempt has been made to make AKM itself a party. Further, an assignment by act of the parties or by act of law does not change the cause or ground of action, though it may add complications. Here, for example, we have seen the possibilities of lengthy litigation on the substantive issue as to the existence of a balance due from the royalties. While the parties, by the vigor and ability shown in their briefs and arguments, have made the issue as to the effect of the receivership one of interest, it still remains one of applying a comparatively few legal principles to undisputed facts, as Judge Coxe's opinion discloses. The mere device of assignment, voluntary or by act of law, is not an adequate basis for the overturn of the settled federal rule against the appealability of interlocutory orders not granted by special statutes. Studer v. Moore, supra.

It should be noted that, except for this added detail of the right of Propper to represent the interests of AKM and its creditors, the situation is the oft-considered one of a claim affecting two or more parties so directly that adjudication as to one cannot be had without definitely settling the rights of the other. This is the standard case where both before and after the rules adjudication must be had as to all before finality obtains. The rule itself appears never to have been questioned, though naturally details in its application have at times presented problems. Hohorst v. Hamburg-American Packet Co., supra; Oneida Nav. Corporation v. W. & S. Job & Co., 252 U.S. 521, 40 S.Ct. 357, 64 L.Ed 697; Bank of Rondout v. Smith, 156 U.S. 330, 15 S.Ct. 358, 39 L.Ed. 441; Hunteman v. New Orleans Public Service, Inc., 5 Cir., 119 F. 2d 465, certiorari denied 314 U.S. 647, 62 S.Ct. 89, 86 L.Ed. 519; cases cited supra. As applied, the rule has not been extended to claims of intervention in receivership proceedings or otherwise which have been treated as separate and distinct from the original proceedings. Collins v. Miller, 252 U.S. 364, 370, 371, 40 S.Ct. 347, 64 L.Ed. 616.[4] Further, the advent of the new federal rules permitting substantially unlimited joinder of claims led to the provisions of Rule 54(b), Federal Rules of Civil Procedure, ascribing finality to separate claims on separate transactions, even within the confines of a single civil action, as the Supreme Court held in Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478, and we are holding in California Apparel Creators v. Wieder of California, Inc., 2

[4] This leading case, after stressing that the judgment to be appealable must be final as "to all the parties" and "as to the whole subject-matter and as to all the causes of action involved," holds without application there: "The seeming exception to this rule by which an adjudication final in its nature, of matters distinct from the general subject of the litigation, like a claim to property presented by intervening petition in a receivership proceeding, has been treated as final, so as to authorize an appeal without awaiting the termination of the general litigation below." An earlier application of the rule as to intervention had occurred in prize cases where independent libels had been consolidated and thereafter various claims were "interposed" in the consolidated libel. Withenbury v. United States, 5 Wall. 819, 72 U.S. 819, 18 L.Ed. 613; Great Lakes Towing Co. v. St. Joseph-Chicago S. S. Co., 7 Cir., 253 F. 635, with explanation at 637, certiorari denied 248 U.S. 578, 39 S.Ct. 20, 63 L.Ed. 430; compare the distinctions made as to the former case in the Hohorst case, supra, and in Nyanza S. S. Co. v. Jahncke Dry Dock No. 1, 264 U.S. 439, 44 S.Ct. 355, 68 L.Ed. 777, Brandeis, J., the last times it has been cited in the Supreme Court. Not all these exceptions are clear; witness the question as to interpleader discussed in 2 Moore's Federal Practice, § 22.13. Here, too, a definite rule is to be desired.

Cir., 162 F.2d 893.[5] While the purpose was clear, difficulties in its application, particularly in this circuit,[6] have led to the suggestion of the amendment to Rule 54(b) in the direction of more specific requirements of finality—an amendment which has been adopted, but is not yet effective.[7] In all this we see no purpose or plan to modify the federal principle; indeed it has been strongly reiterated. Catlin v. United States, 324 U.S. 229, 233, 234, 65 S.Ct. 631, 89 L.Ed. 911; and see also United States v. Florian, 312 U.S. 656, 61 S.Ct. 713, 85 L.Ed. 1105.

While this federal rule thus depends upon general principles and policies, Catlin v. United States, supra, not upon its scope of operation in a particular case, yet we deem it appropriate to suggest doubt whether any ultimate inconvenience here from the application of the rule is indicated. The parties do not state that a fiduciary title in Propper before the freezing order would do away with the enemy taint; unless this is so the whole present dispute may well have more procedural than substantive aspects. Assuming the decision below to be correct, still Propper is not an interloper; he is a state judicial officer with duties to preserve and protect the assets of the estate committed to his charge. Though he may not be an appropriate formal party, he can properly contest the merits of ASCAP's claim in the right of AKM and raise any other issue in the case which affects AKM rather than himself. And the plaintiff's position would seem to be at least no weaker, and possibly even stronger, if final judgment comes only after the court has heard some defense on behalf of AKM against the merits of the

ASCAP contention. Hence how really decisive this preliminary skirmish will be on the ultimate result is not yet disclosed.

Appeal dismissed.

FRANK, Circuit Judge (dissenting).

I dissent because this decision has marked precedential significance (since I think it overrules many decisions of the Supreme Court, of this Court, and of other Circuit Courts) and because it is distinctly harmful to both parties to this appeal. My reasons, more in detail, follow.

1. Grave injustice may easily stem from the application, without a nice regard to the particular facts of a case, of wide generalizations about "piecemeal appeals." Apparently, at least for a moment, my colleagues (although somewhat reluctantly) so recognize. For, in support of their conclusion (which is contrary to the desires of both parties, earnestly expressed in their briefs) that the judgment is not final and appealable, (1) my colleagues say that Propper lost a mere "preliminary skirmish," since (so they assert) the court below decided only that Propper does not have "formal legal title" to the claim against A.S.C.A.P., and (2) they imply that he is in substantially the same position as he was before that judgment to participate in the trial in the district court against A.S.C.A.P. That the consequence of the judgment was not so superficial, and that dismissal of this appeal may have very substantial adverse effects on both Propper and plaintiff, appear, I think, from the following:

Plaintiff's complaint joins two parties defendant, A.S.C.A.P. and the receiver, Propper. The complaint and the defenses fall into two separate parts: (a) Counts 1 and

---

5 Such cases, like Collins v. Metro-Goldwyn Pictures Corporation, 2 Cir., 106 F.2d 83, and Zalkind v. Scheinman, 2 Cir., 139 F.2d 895, certiorari denied 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572, dealing with separate and distinct claims, are hence not in point here.

6 Probably induced by the local state practice allowing numerous interlocutory appeals, which is said to be a ground for choosing federal jurisdiction where possible. Harper, Civil Practice in the Federal Courts, 1946, 1, 80, 81.

7 Since this amendment is only directly applicable in the district courts, it may

not settle all questions; but undoubtedly it will be helpful as greatly narrowing the potential area of dispute and as suggesting there a form of reconciliation of disputed issues. For general approval of the amendment, see Ilsen, Federal Rules of Civil Procedure with Approved Amendments, Rev.Ed. 1947, 439; Armstrong, Advisory Committee Recommendations, 5 F.R.D. 339, 350 (cf. id., 4 F.R.D. 124, 126); 56 Yale L.J. 141; 47 Col.L.Rev. 239, 254; and cf. Advisory Committee's Note to F.R. 54(b) in its Report of June, 1946, pp. 70–72.

3 relate solely to the assertion of plaintiff's claim, as successor of the Alien Property Custodian, against A.S.C.A.P. Coupled with those counts is a prayer for a money judgment against A.S.C.A.P. In its answer, A.S.C.A.P. pleaded an offset of money owing to it from A.K.M., but did not ask any judgment for any excess owing to A.S.C.A.P. (b) Count 2 deals solely with Propper; it alleges facts relating to his purported title to the A.K.M. claim against A.S.C.A.P., including the fact that, before Propper, while still a temporary receiver, had made a demand on A.S.C. A.P., the freezing order had issued. Coupled with this count is a prayer, distinct and apart from the prayer as to the A.S.C.A.P., that "the court find and adjudge * * * that" Propper "has no title or interest in said assets of A.K.M. superior to that of this plaintiff, and that the purported acquisition of title by said Propper, receiver, is null and void as against this plaintiff."

Pursuant to plaintiff's prayer as to Propper—in effect a prayer for a judgment removing a cloud on title to plaintiff's claim against A.S.C.A.P.—the district judge, on plaintiff's motion for summary judgment, entered a judgment which "ordered and adjudged that the defendant Henry M. Propper * * * acquired no right, title or interest in or to the funds" of A.K.M., "held by" A.S.C.A.P., and "has no right, title or interest in or to the said funds"; it further ordered that plaintiff recover costs against Propper, and that "plaintiff have execution therefor." I fail to understand how that judgment can be said by my colleagues to decide only that Propper has no "formal legal title." In the plainest possible terms it adjudges that he has no title whatever. Obviously, it was intended to and will bar him from participation in the trial which will now ensue between plaintiff and A.S.C.A.P., where the issue will be whether A.S.C.A.P. owed anything to A.K.M. (and therefore to plaintiff as successor of A.K.M.).

Conceivably, my colleagues might so have construed the judgment that it would in no way have affected Propper's relation to the trial, i. e., they might have construed it as but a tentative warning in advance by the trial judge that, at the end of the trial, in which Propper would participate as fully as if there had been no such judgment, the judge, should A.S.C.A.P. lose, might hold that Propper would not be entitled to recover—unless meanwhile the judge had changed his mind. But, doubtless because of its obviously strained character, my colleagues have not relied on such an interpretation of the judgment.[1] They concede that Propper, because of the judgment, is no longer a party and will not be, unless we reverse that judgment, and that therefore, with the dismissal of this appeal, he will be unable to play the role of a party at the trial. To be sure, my colleagues do make this curious suggestion: As Propper is a receiver of A.K.M., he can—although not as a party—"in the right of A.K.M. * * * properly contest A.S.C. A.P.'s claim" and "raise any other issues which affect A.K.M. rather than himself." That suggestion I understand to mean this: If A.S.C.A.P. were to ask for judgment against A.K.M. for an amount due A.S.C. A.P. in excess of what it owes A.K.M., then Propper "in the right of A.K.M." could contest at the trial as to that excess. But that suggestion is thoroughly academic. For A.S.C.A.P. in its answer has sought no judgment for such an excess, and there is no indication that it plans to deviate from that course. Consequently (turning aside from a purely hypothetical and unreal situation) unquestionably Propper will be a total stranger to the trial: He will not be permitted to introduce evidence, examine or cross-examine witnesses, object to evidence offered by A.S.C.A.P., or make motions of any kind.

As matters now stand, under my colleagues' decision, only when, after that trial, a judgment for or against A.S.C.A.P. has been entered, can Propper appeal; then, for the first time, will he be allowed

---

[1] Had they done so, I would have considered the interpretation a strange departure from the district judge's purpose but perhaps, in order to ensure a fair result here and to prevent the creating of an unwise precedent, I would not have dissented.

to assert in this court that the declaratory judgment against him was erroneous. If, on that appeal, he wins, the case will be remanded for another trial, this time between Propper and A.S.C.A.P. Evidence introduced at the first trial (other than admissions by A.S.C.A.P.) will have to be offered anew. That alone would perhaps not be too harmful to Propper, except for the long delay. But if it turns out, on the later appeal, that, as between plaintiff and Propper, the latter was the sole legitimate claimant against A.S.C.A.P., the result will be that the first trial will have been conducted by plaintiff, without any right to do so. This may mean that important witnesses, interrogated by plaintiff's counsel, will have so testified as to embarrass and prejudice Propper at the second trial. For a witness, carelessly questioned, may give careless answers which may later be used to impeach him when, in a subsequent trial, he is more carefully questioned. Consequently, dismissal of this appeal without a decision on the merits, may be seriously detrimental to Propper.

It may also be seriously harmful to plaintiff. For if, at the end of the trial, he obtains a judgment against A.S.C.A.P., we may then, on appeal from that judgment, hold erroneous the present declaratory judgment against Propper; the result will be that plaintiff will have incurred, without recompense, the considerable expense of conducting a trial to vindicate a claim in which he had no interest.[1a] Doubtless for that reason plaintiff joins with Propper in resisting dismissal of the present appeal. We have here an illustration of the fact that disallowance of an appeal from an erroneous dismissal order may impose needless expense on the party in whose favor and at whose instance that order was made.[1b]

2. This sort of situation is by no means novel. In divers circumstances, it has often been held that an order is final and appealable which shuts out one claimant to assets (whether tangible or intangible), although the claims of others, not of a joint character with the barred claim, remain undetermined.

In a landmark decision of that kind, Withenbury v. United States, 5 Wall. 819, 18 L.Ed. 613, the facts were these: Consolidated libels were filed for the condemnation, as a prize of war, of captured cotton and other property. Withenbury & Doyle interposed a claim to a portion of the property. The trial court denied this claim. With the libels as yet untried and wholly undecided, Withenbury & Doyle and another claimant appealed. The Supreme Court held that the order denying the Withenbury & Doyle claim was final and appealable. In doing so, it rejected the following argument, made in support of a motion to dismiss the appeal, an argument which strikingly parallels the views stated by my colleagues here: "The inconvenience of admitting * * * that a cause in admiralty can be divided so as to bring up successively distinct parts of it, is illustrated in the present case by the fact that not only have Withenbury & Doyle taken an appeal on their claim, leaving the cotton and the libel against it in the court below, undisposed of, but that other parties, namely, Le More, claiming a part of the same cotton on the same libel, but adversely to Withenbury & Doyle, have also taken an appeal, and entered it here. Thus we have two adversary sets of claimants, each *splitting off from the main case,* and from one another, and *coming here with their appeals, while the main case still remains in the inferior court. Can appeals be thus evolved indefinitely from the body of one case? We think not; but that on rejecting all the claims against this parcel of cotton, the court below should have proceeded to determine the question of prize,*

---

[1a] In Los Angeles Brush Mfg. Corporation v. James, 272 U.S. 701, 707, 47 S. Ct. 286, 289, 71 L.Ed. 481, the Court said (per Chief Justice Taft), "One of the causes for complaint of the general administration of justice is the expense it entails upon the litigants * * *." It should be immaterial that the plaintiff here is the Attorney General; the expenses he incurs will be paid by the taxpayers.

[1b] In the case of a private litigant, it may, indeed, in practical terms, deprive him of any appeal whatever: to take the chance of defeat on appeal after a costly trial may involve too expensive a gamble. That consideration may induce him to accept an unfair settlement.

*and after that to decide what to do with the proceeds of the cotton, and then to enter a final decree. Upon such a decree any or all parties might have appealed in due form."[2]*

There is no reason to believe that it would have made the slightest difference to the Supreme Court when it refused to adopt that argument, if Withenbury & Doyle, instead of asserting a claim on its own initiative, had been joined as a party defendant, as was Propper here. No rational ground for such a distinction can be suggested. Indeed, that the doctrine of Withenbury v. United States is not limited to cases in which the claim of a defendant is dismissed, we recently made plain in Collins v. Metro-Goldwyn Pictures Corporation, 2 Cir., 106 F.2d 83, 85 (C.C.A. 2), where we cited and relied on Withenbury v. United States as authoritative when we refused to dismiss an appeal from an order dismissing but one of two claims contained in a plaintiff's complaint—and that, too, after the adoption of the present Rules of Civil Procedure. Our reliance in the Collins case on the Withenbury case should also serve to dispose of my colleagues' intimation that the Withenbury doctrine is confined to prize or admiralty cases.[2a]

3. We have held repeatedly in our decisions in cases citing Collins v. Metro-Goldwyn Pictures Corporation, supra, that the key question is whether the same evidence, without substantial additions, will be sufficient to support both the dismissed and the non-dismissed claims. If the answer is no (i. e., if substantial additional evidence is needed), the order dismissing the one claim is final and appealable; if the answer is yes, the order is not appealable. See Zalkind v. Scheinmann, 2 Cir., 139 F.2d 895, certiorari denied 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572; Zarati S. S. Co. v. Park Bridge Corporation, 2 Cir., 154 F.2d 377; Musher Foundation Co., Inc., v. Alba Trading Co., Inc., 2 Cir., 127 F.2d 9, certiorari denied 317 U.S. 641, 63 S.Ct. 33, 87 L.Ed. 517; Lewis v. Vendome Bags, 2 Cir., 108 F.2d 16, certiorari denied 309 U.S. 660, 60 S.Ct. 514, 84 L.Ed. 1008; Sidis v. F-R Pub. Corporation, 2 Cir., 113 F.2d 806, certiorari denied 311 U.S. 711, 61 S.Ct. 393, 85 L.Ed. 462; Treasure Imports v. Henry Amdur & Sons, 2 Cir., 127 F.2d 3.[2b]

4. Thanks to their failure to observe this distinction, my colleagues are here, I think, overruling a long line of decisions (rendered both before and since the adoption of the Rules). Those decisions held appealable the following kinds of orders: (1) An order dismissing a claim of a creditor in a receivership, although the claims of other creditors remained undetermined.[3] (2) An order that one party to an interpleader has no claim against another, with the rights of other parties still undecided.[4] (3) An order denying title of but one of several claimants in a condem-

---

[2] Emphasis added. 5 Wall. 819, at page 820, 18 L.Ed. 613. Cf. Great Lakes Towing Co. v. St. Joseph-Chicago S. S. Co., 7 Cir., 253 F. 635, 637.

[2a] The discussion of the Withenbury case in Hohorst v. Hamburg-American Packet Co., 148 U.S. 262, 265, 13 S Ct. 590, 37 L.Ed. 443, shows that there is no basis for that suggested restriction.

[2b] Some of the cases cited deal with the problem raised by Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. But they are in point since, as we said in Zalkind v. Scheinman, 2 Cir., 139 F.2d 895, 897, certiorari denied 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572, where a nonfederal claim is joined with a federal claim, "if the two claims are sufficiently distinct to oust federal jurisdiction of the nonfederal claim, then they are also so distinct as to render final and appealable an order of the trial court dismissing the nonfederal claim while the other claim still remains on the trial calendar." (We there pointed out that the converse is not necessarily true.)

[3] See, e. g., Hatch v. Morosco Holding Co., 2 Cir., 19 F.2d 766, affirmed 279 U. S. 218, 49 S.Ct. 310, 73 L.Ed. 669; Yorkshire Inv. etc. Co. v. Fowler, 2 Cir., 78 F. 56; City and County of Denver v. Stenger, 8 Cir., 295 F. 809; American Brake Shoe, etc. Co. v. New York Railways, 2 Cir., 282 F. 523, 527–528; cf. Odell v. H. Batterman Co., 2 Cir., 223 F. 292, 295, 296; Dodge v. Norlin, 8 Cir., 133 F. 363; Collins v. Miller, 252 U.S. 364, 368–370, 40 S.Ct. 347, 64 L.E 1. 616.

[4] Bank of Taiwan v. Gorgas-Pierie Mfg. Co., 3 Cir., 273 F. 660, 661; cf. Standley v. Roberts, 8 Cir., 59 F. 836, 839, 840.

948

nation proceeding.[5]  (4) An order dismissing claims of only some of the plaintiffs in a trust accounting action, where the divers plaintiffs' claims were not joint.[6]  (5) An order . denying intervention when it is a matter of right.[7]  In each of those cases, my colleagues' thesis would have required dismissal of the appeal.

5. My colleagues cite cases—such as Hohorst v. Hamburg-American Packet Co., 148 U.S. 262, 13 S.Ct. 590, 37 L.Ed. 443; Porter v. American Distilling Co., 2 Cir., 157 F.2d 1012; Photometric Products Co. v. Radtke, 2 Cir., 157 F.2d 849; United States ex rel. Weinstein v. Bressler, 2 Cir., 160 F. 2d 403, 405—in each of which an order dismissed but one of several parties, the asserted liability being joint: I think such decisions, holding not final such an order as to joint parties, are wholly inapposite. I shall not bother to distinguish all the other cases my colleagues cite. The following are typical. In Petrol Corporation v. Petroleum Heat & Power Co. Inc., 2 Cir., 162 F.2d 327, the order did not dismiss one of several claims, but the order was held interlocutory for the reason that damages remained to be determined. In Audi Vision, Inc., v. R.C.A. Mfg. Co., 2 Cir., 136 F.2d 621, 624, 147 A.L.R. 574, the opinion stated that the claims (one dismissed, the other not) "are so connected that they turn upon the proper meaning and application of a single sentence in a lengthy written contract * * *."[7a]  In Libbey-Owens-Ford Glass Co. v. Sylvania In-

dustrial Corporation, 2 Cir, 154 F.2d 814, certiorari denied 328 U.S. 859, 66 S.Ct. 1353, 90 L.Ed. 1639, the court held that an order striking one of several defenses was interlocutory; the only question was whether or not the stricken defense was a permissive counterclaim (in which event the order would have been final), and the majority held the defense was not such a counterclaim. I cannot comprehend why such decisions are deemed in point here.

Nor can I understand the pertinence of Studer v. Moore, 2 Cir., 153 F.2d 902.[7b]  There a successor (assignee) of a bank depositor asserted title to a deposit, in the defendant bank, against the bank and also against the State Comptroller, the bank having transferred to the Comptroller, under a state statute, the amount of the deposit as "abandoned property." An order dismissing the action as against the Comptroller was held non-appealable, because the suit continued as to the bank. The pivotal fact was that precisely the same evidence, no more and no less, was required to support the claims against both defendants.[7c]

6. Of course, expedition should not be the sole aim of procedure. It should never be purchased at the expense of preventing a fair trial. For that reason, this court and others have discountenanced the use of a summary judgment, based on a mere written record, when it deprives one of the parties of a trial affording him the opportunity to cross-examine important witnesses whose credibility may critically affect decision on issues of fact.[7d]

[5] State of Texas v. Chuoke, 5 Cir., 154 F.2d 1, 2, certiorari denied 329 U.S. 714, 67 S.Ct. 45; State of Texas v. Harris County, 5 Cir., 158 F.2d 861, 864; cf. United States v. River Rouge Co., 269 U.S. 411, 413, 414, 46 S.Ct. 144, 70 L.Ed. 339; Williams v. Morgan, 111 U.S. 684, 4 S.Ct. 638, 28 L.Ed. 559.

[6] Crutcher v. Joyce, 10 Cir., 134 F.2d 809, 813; cf. Baird v. Peoples Bank & Trust Co., 3 Cir., 120 F.2d 1001, 1003.

[7] See e. g., Missouri-Kansas Pipe Line Co. v. United States, 312 U.S. 502, 505, 508, 665, 61 S.Ct. 666, 85 L.Ed. 975; Brotherhood of Railroad Trainmen v. B. & O., 331 U.S. 519, 67 S.Ct. 1387; Gumbel v. Pitkin, 113 U.S. 545, 548, 5 S.Ct. 616, 28 L.Ed. 1128; Universal Ins. Co. v. Old Time Molasses Co., 5 Cir., 46 F.2d 925, 926; Cathay Trust v. Brooks, 9 Cir.,

193 F. 973; Barrett v. Commercial Credit Co., 54 App.D.C. 249, 296 F. 996, 997; see discussion and cases cited in Sorensen v. United States, 2 Cir., 160 F.2d 938.

[7a] See the exposition of the facts of the Audi Vision case in the dissenting opinion in Libbey-Owens-Ford Glass Co. v. Sylvania Industrial Corporation, 2 Cir., 154 F.2d 814, 820, note 6.

[7b] See also Studer v. Moore, 2 Cir., 156 F.2d 10.

[7c] Moreover, on the face of the complaint, the action appeared to be against both defendants for a joint liability.

[7d] Arnstein v. Porter, 2 Cir., 154 F.2d 464; Bozant v. Bank of New York, 2 Cir., 156 F.2d 787; Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135; Dixon v. American Tel. &

But sometimes, as here, expedition in deciding an appeal is essential to fairness, a fact which the Supreme Court has made clear. I think my colleagues misinterpret the relevant Supreme Court decisions. They treat as if at war with one another two lines of cases which in truth vindicate the policy of expedition: The one line—represented by such cases as Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783, and Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911—opposes "piecemeal" appeals in a completely unified dispute, because any such appeal will "delay the progress of the trial" [309 U.S. 323, 60 S.Ct. 542]; the other—represented by such cases as Withenbury v. United States, supra, and Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478—permits an immediate appeal from an order dismissing one of several distinct claims, again to prevent delay.

In Audi Vision, Inc. v. R. C. A. Mfg. Co., supra, the majority opinion set forth the following reasons for disallowing a truly "fragmentary" appeal, reasons all of which are pointless here: (1) The "waste of time and expense"; that argument cuts precisely the other way in the case at bar. (2) The "mischance of differing dispositions of what is essentially a single controlling issue"; there could be no such "mischance" if we entertained the present appeal. (3) The "shifting" of "emphasis from merits to form"; no such shifting would occur here. (4) The "abbreviation of a lawsuit beyond what is really feasible"; the "abbreviation" here is eminently feasible.

7. In further support of their position that Propper, by the judgment, lost merely a "preliminary skirmish," my colleagues say: "The parties do not state that a fiduciary title in Propper before the freezing order would do away with the enemy taint * * *" Of course, the parties do not so state. Plaintiff's brief on the merits, which attempts with vigor to sustain the judgment, does not so much as intimate that there is any such infirmity ("enemy taint") in Propper's title. In that brief, the plaintiff maintains that the infirmity derives solely from the freezing order.

8. Above all, I am surprised that my colleagues should rest their decision on the alleged doctrine that where a so-called "central core of facts" is the subject matter of two claims, then, without more, the dismissal of but one of those claims is not final. That alleged doctrine this court has repeatedly repudiated. As previously noted, we have often held (against persistent dissents) that the test is this: If, despite a so-called "central core of facts" common to a dismissed claim and a non-dismissed claim, decision with respect to the dismissed claim requires consideration of substantial relevant evidence in addition to that which is relevant to the non-dismissed claim,[8] then the dismissal order is final. See the cases cited in point 3 of this dissent, supra, the most recent of which is Zarati S.S. Co. v. Park Bridge Corporation, 2 Cir., 154 F. 2d 377, 379. That case dealt with consolidated appeals from orders dismissing the complaint as to two of three defendants, the third defendant being the charterer of a vessel. We held it no ground for refusing to entertain the appeals that the issues were "intertwined," since the claims against each of the three defendants were "predicated upon separate facts and separate theories, even though they all grow out of a single business venture" and the liability of the appellees depended "upon the legal effect of their own later acts"; and we

Tel. Co., 2 Cir., 159 F.2d 863; see also Avrick v. Rockmount Envelope Co., 10 Cir., 155 F.2d 568, 571.

"All manner of expedients," says Dean Pound, "have been resorted to * * * to arrive at a written settlement of the facts not dependent on the credit to be accorded witnesses or the impression they may make on the particular trial court. These expedients in varying forms are intended to sift out the crucial fact or facts by a series of averments and admissions on interrogatories addressed to the respective parties. But experience has shown we cannot be sure that in getting a clear-cut statement of facts in advance in this way, to which the law may be applied, we are not cutting out too much, so in the end to be trying an artificial case instead of the real controversy." Pound, Appellate Procedure in Civil Cases (1941) 29.

8 Or vice versa.

pointed out that "the orders here do not affect determination of the charterer's liability."

The test applied by us in those cases has, we have said,[9] been sanctioned by Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478. It seems clear to me that, applying that test here, the judgment against Propper is final. For, although plaintiff's claim against Propper relates to Propper's title to the claim against A.S.C.A.P., so that there is a so-called central core of facts, yet substantial evidence germane to the one claim is not germane to the other. The differentiation between the two parts of this suit—one relating to the removal of Propper's asserted rights as a cloud on plaintiff's title, and the other relating to plaintiff's claim against A.S.C.A.P. for a money judgment—seems to be at least as marked as that between the claims in Reeves v. Beardall, supra.

If we now adopt the so-called "central core of facts" test, we should, I think, henceforth regard as over-ruled all our own decisions cited in point 3 supra, to say nothing of the many cases cited in point 4, supra, as well as Withenbury v. United States, supra, and Reeves v. Beardall, supra. Accordingly, the decision here, because of its precedential significance for many future litigants, has an importance which transcends the injury it does the parties to the present suit. Inconsistent as it is with our previous decisions and with those in other circuits,[10] it deserves and I hope it will receive the attention of the Supreme Court.

9. The "central core" idea is here being transplanted to the field of appeals from another distinct field[10a] where undoubtedly it has been fruitful. The history of that idea, briefly stated, is this: The phrase "cause of action" had often yielded injustice (as e.g., with reference to "relation back" in a case in which a complaint was amended, after the statute of limitations had run, to assert a different "legal right"). In a laudable campaign to eradicate such injustices, two devices, coupled together, were employed: (1) Relying on the language of the procedural codes, the concept of a "transaction," rather than the "legal rights arizing therefrom," was urged as "the subject matter of the complaint." (2) For this purpose, "transaction" was defined as events having a "central core of facts."[10b] Not inappropriately, the use, in that campaign, of these combined ideas has been called "pragmatic" by its sponsors.[10c] As that campaign eventuated in laudable successes,[11] those sponsors have rightly earned hearty approbation.

But some of them have not been content with their achievements. Although earlier they had objected to a rigid—"unpragmatic"—definition of "cause of action," they now insist that "transaction," in all procedural contexts, must be defined in but one way, regardless of the practical consequences. Wherefore, they say, as Rule 54(b) includes the word "transaction," it must there mean events having a "central core of facts" and must be thus applied in the context of appeals. I believe that the advocates of this thesis are motivated by a desire to attain æsthetic verbal symmetry and verbal consistency, heedless of the actual results. In their eagerness to transplant a rigid definition of "transaction" to the quite different area of appeals, they uncharacteristically abandon their frequent

9 See Zalkind v. Scheinman, 2 Cir., 139 F.2d 895, certiorari denied 322 U.S. 738, 64 S Ct. 1055, 88 L.Ed. 1572.

10 For recent cases in other circuits, inconsistent with the reasoning of my colleagues' decision here, see, e. g., Lydick v. Fischer, 5 Cir., 135 F.2d 983; Kasishke v. Baker, 10 Cir., 144 F.2d 384, certiorari denied 325 U.S. 856, 65 S.Ct. 1185, 89 L.Ed. 1976; Moreno v. United States, 1 Cir., 120 F.2d 128, 130; Hanney v. Franklin Fire Ins. Co., 9 Cir., 142 F.2d 864.

10a The distinction between the two fields seems to be recognized in Clark, Code Pleading (2d Ed.1947) 126.

10b This definition, it is said, was contrived with an "eye to trial convenience."

10c See, e. g., 1 Moore, Federal Practice (1938) 145.

11 See, e. g., United States v. Dickinson, 67 S.Ct. 1382; United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619. Cf. discussion of "relation back" in Hammond-Knowlton v. United States, 2 Cir., 121 F.2d 192, 200.

wise and commendable cautions about the virtues of procedural flexibility and, instead, stress the virtues of procedural uniformity. They forget that one with a true "pragmatic" attitude, shunning over-simplifications, evaluates any idea by its concrete results and never extends it beyond the point where "operationally" it shows up badly.[11a] A meat axe will cut, but ought not (except in dire necessity) be used to pare finger-nails. "Pragmatism," said Peirce, "is only an application of the sole principle of logic recommended by Jesus, 'Ye may know them by their fruits' * * * "[11b] Adoption of a pragmatist vocabulary does not alone guarantee a pragmatic performance; such locutions may accompany anti-pragmatic thinking. Substituting the word "transaction" for "cause of action," what the Supreme Court recently said of "cause of action" becomes pertinent here: We should be on guard against "the danger of determining rights based upon definitions" of a "transaction" which are "unrelated to the function which the concept serves in a particular situation"; when "dealing with a problem which arises under such diverse circumstances, procedural rigidities should be avoided."[11c]

I think that a ruling, like that of my colleagues in this case, which will not only cause long delay but also in other ways may seriously prejudice the parties, ought not to be made merely to afford satisfaction to those interested in maintaining the æsthetic proportions of a procedural theory. More important than delight in such verbal symmetry (as I believe the Supreme Court recognized in Reeves v. Beardall) is the avoidance of needless unfairness to litigants. A legal theory, no matter how beautiful in outward form, cannot be a wise theory, if, in actual practice, it works substantial injustice. Procedure, we have often heard, should be but the "hand-maid" of justice. I think that here the servant has achieved mastery.[12]

---

[11a] Such is the "pragmatic" attitude in physical science: "That principle, theory or 'law' is dignified as scientific which best promotes the actual attainment of control of concrete transformations. To this end, the experimenter will use Euclidean or non-Euclidean geometries, geometries of four dimensions and of six, ordinary algebra and systems in which ab does not equal ba; he will employ a quantum theory where it promises results along with an undulatory theory where it is productive"; Fries, Science and the Foundations of Freedom, 41 J. of Philosophy (1944) 113, 116–117. See Bridgman, The Intelligent Individual and Society (1938), 54; Bridgman, The Logic of Modern Physics (1927) passim; Demogue, An Analysis of Fundamental Notions, in the volume Modern French Legal Philosophies (1921) 351, 391, 564; Frank, Fate and Freedom (1945) 327–328; Cohen, Transcendental Nonsense and The Functional Approach, 35 Col.L.Rev. (1935) 809.

Long ago Aristotle warned that "the truth in practical matters is judged from operations and life, for the decisive factor is to be found in them."; Nicomachean Ethics, X, ch. 8, 1179a, 16–22; McKeon, Aristotle's Conception of The Development and The Nature of Scientific Method, 8 J. of The History of Ideas (1947) 3, 40.

Kenneth Burke sagaciously warns that, correlative with the principle known as Occam's razor, we need another: "Entities should not be reduced beyond necessities"; Burke, A Grammar of Motives (1945), 324. See discussion and citations in Ricketts v. Pennsylvania R. Co., 2 Cir., 153 F.2d 757, 764, 765, 164 A.L.R. 387.

[11b] Quoted by Feibleman, Introduction to the Philosophy of Peirce (1946) 300.

[11c] United States v. Dickinson, supra.

[12] I cannot agree with the suggestion, twice made by my colleague Judge Clark (see Libbey-Owens-Ford Glass Company v. Sylvania Industrial Corporation, supra, and Petrol Corporation v. Petroleum Heat & Power Co. Inc., supra), that the amendment of Rule 54(b), which is not yet operative, has a bearing on cases decided before its effective date. But the suggestion invites the following interesting speculation: I strongly suspect that the trial judge here thought he was entering a final judgment. Suppose, then, that, when this case resumes in the district court, the judge, after the revised Rule becomes operative, and before the trial, re-enters the declaratory judgment against Propper, using the appropriate language as to finality in accordance with the revised Rule, i. e., "That there is no just reason for delay." (I think he can clearly do so, if the judgment as it now stands is interlocutory, as my colleagues hold.) If the judge so acts, will that re-entered judgment become at once appealable?

My colleagues cite Rule 54(b), but they overlook Rule 1 which says that the purpose of all the Rules is "to secure the just, speedy, and inexpensive determination of every action." If interpreted with that purpose constantly in mind, the Rules will

In other words, does that Rule confer on a district judge the absolute power, by merely using or failing to use the formula set forth in that Rule, to determine our appellate jurisdiction? Can he render appealable an order of a kind not heretofore appealable as, for instance, an order relating to a minor pleading matter? Or, for example, can he, by not using the formula, prevent an immediate appeal from an order denying intervention where it is a matter of right? One wonders, since *we have often been told that the statute which authorizes rules of practice in the district courts does not authorize changes in appellate jurisdiction;* see Moore, 3 Federal Practice, 3155; Audi Vision, Inc., v. R. C. A. Mfg. Co., 2 Cir., 136 F.2d 621, 147 A.L.R. 574; Clark, Code Pleading (2 ed. 1947), 529. Perhaps (although I am not at all sure) the answer is this: The Rule is intended to make decisive the district judge's determination of finality only if the right of appeal would have been doubtful before the Rule went into operation.

If the Rule were construed literally, so as to go further, we might have some most unfortunate results, since *experience teaches that a trial judge, mistakenly convinced that his order is flawless and that an appeal would be useless, may well be unwilling to expedite its review.* If, for example, with the rule literally construed, a judge, in his discretion, refuses to declare final an order by which he denies an intervention that is a matter of right, then, notwithstanding Missouri-Kansas Pipe Line Co. v. United States, 312 U.S. 502, 665, 61 S.Ct. 666, 85 L.Ed. 975 and similar cases, the party denied intervention will be obliged to postpone his appeal until the entry of a judgment after a trial, lasting perhaps for several weeks, from which he has been barred; when that judgment is entered, his appeal will necessarily lead not only to a reversal of the denial-of-intervention order but also to a remand for a retrial. For a more unfortunate result consider the discussion, in the concurring opinion in Audi Vision, Inc., v. R. C. A. Mfg. Co., Inc., 2 Cir., 136 F.2d 621, note 3, 147 A.L.R. 574, of Thompson v. Murphy, 10 Cir., 93 F.2d 38; suppose that the amended Rule had then existed and that the district judge there had refused to declare his order final.

It is suggested that to vest absolute discretion in the district judges as to the finality, and thus appealability, of orders

will insure uniformity in the federal courts. See 55 Yale L.J. (1946) 141, 149. That is a fatuous notion: Consider the notorious lack of uniformity in sentencing by the district judges.

If there is to be discretion to allow interlocutory appeals, it would seem wiser to vest that discretion in the appeal Courts, for they are far more likely than the district judges to see the errors in the orders of these judges, and to comprehend when injustice will be caused by delays in reviewing such orders. It has therefore been suggested that, by statute, the circuit courts be so empowered, provided the exercise of that discretion in any case turns on a finding by such a court that not to permit the appeal would be to work serious injustice. See Zalkind v. Scheinman, 2 Cir., 139 F.2d 895, note 3b, certiorari denied 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572; concurring opinion in Audi Vision, Inc. v. R. C. A. Mfg. Co., 2 Cir., 136 F.2d 621, 625-628, 147 A.L.R. 574. Indeed, such a new statute might well confer like discretionary power in bankruptcy cases, where now, in many instances, the circuit courts are obliged to hear frivolous interlocutory appeals. Were such discretion granted, the federal courts would not encounter the difficulties experienced by the New York courts where, in many cases, interlocutory orders are appealable as of right.

The present federal statute may trap a litigant: If he fails to appeal from an order which he believes interlocutory and non-appealable, he may find, when he appeals from that order after the close of the entire suit, that an earlier appeal was necessary, with the result that his appeal is barred by lapse of time. Accordingly, the proposed new appeals statute should, I think, provide something like this: (1) Until all the issues in the entire suit have been determined, any appeal will be classified as "discretionary"; (2) failure to seek a "discretionary" appeal shall be no bar, because of lapse of time, to an appeal taken when all the issues have been determined.

To prevent interlocutory appeals from unimportant procedural rulings is wholly desirable. But the opposition to interlocutory appeals (expressed by some procedural reformers), on the ground that such appeals emphasize procedural issues in the appellate courts, would logically lead to what I would regard as a backward step—the repeal of the federal statutes authorizing such appeals from or--

represent an admirable achievement.[13] Otherwise they will become but one more of the procedural "reforms" which have earned justified criticism of the courts.[14]

ders relating to injunctions and from certain interlocutory orders in admiralty and patent cases.

[13] "But the courts do not exist for the lawyers; they do not exist for the judges. They exist for litigants, and litigants are entitled to the best possible procedure that human ingenuity can render. The courts are established to administer justice, and you cannot have justice if justice is constantly being thwarted and turned aside or delayed by a labyrinth of technical entanglements. Manifestly, the whole profession * * * are earnestly desirous of ridding the courts * * *

of being the home of delay and the home of technicality"; Remarks of Attorney General Cummings before the House Committee on the Judiciary concerning the Rules. "Procedural rules are means to an end, not an end in themselves. This is a truism all too often forgotten"; Clark, Code Pleading (1947) (2d Ed.) viii.

[14] Illustrative are the English "Hilary Rules" of 1834; see Hayes, Crogate's Case: A Dialogue in Ye Shades on Special Pleading Reform, reprinted in 9 Holdsworth, History of English Law (2d Ed.1938) 417.