UNITED STATES ex rel., Ralph
HUGHES, Sr.

v.

Dr. Louis H. COOK et al.

Civ. A. No. J79–0106(R).

United States District Court,
S. D. Mississippi,
Jackson Division.

Sept. 30, 1980.

Robert Lawson Holladay, Drew, Miss., for Dr. John Egger.

C. R. Montgomery, Canton, Miss., for Drs. Lewis H. Cook, James O. Gilmore, Carl G. Nichols, William H. Spragins, Thomas H. Simmons, and Richard E. Waller.

Louis C. T. Baine (Co–Counsel for Sams, Egger), and W. F. Goodman, Jr., Jackson, Miss., for Dr. Lamar Puryear, Jr.

Joe O. Sams, Jr., Columbus, Miss., for Dr. James H. Sams.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW IN SUPPORT OF
SUMMARY JUDGMENT FOR ALL
DEFENDANTS

DAN M. RUSSELL, Jr., Chief Judge.

I.

FINDINGS OF FACT

This is a *qui tam* or informer action brought by plaintiff, Ralph Hughes, Sr. ("Hughes"), acting pro se, against nine separate defendants all of whom are medical doctors practicing in various localities throughout Mississippi. Hughes' previously was enjoined by the Chancery Court of Lee County, Mississippi from continuing the unlicensed practice of osteopathic medicine.[1]

Proceeding under the False Claims Act, 31 U.S.C. § 231 et seq.,[2] plaintiff alleged that each of the defendant physicians had submitted "false" claims to the Medicaid Department of the State of Mississippi, and the Complaint seeks an aggregate recovery of some $80,000,000 and informer's compensation (up to one–fourth) for plaintiff himself. There is no claim whatever of alleged fraud.

A discovery deposition has established that defendant Dr. Lamar Puryear, Jr., has never, knowingly or unknowingly, submitted a Medicaid claim that was either "false" or "fictitious" or "fraudulent," and has never undertaken in any fashion to cheat or defraud any agency of the State of Mississippi or the United States of America, but rather has honorably and diligently practiced medicine in Hazlehurst, Copiah County, Mississippi, since 1952. Each of the other eight defendant physicians have filed affidavits which similarly show that they have never submitted a Medicaid claim that was false, fictitious or fraudulent; have never undertaken in any fashion to cheat or defraud any agency of the State of Mississippi or the United States of America, but rather all such Medicaid claims have been fair and reasonable charges for services actually performed. These facts are not disputed by Hughes as to any of the nine defendant physicians.

Plaintiff Hughes' deposition was taken by counsel for Dr. Puryear. In this deposition plaintiff admitted that he was not making any charge against the qualifications, credentials, ability or integrity of Dr. Puryear in any way, shape or form. Plaintiff further admitted that his only basis for filing the suit was that according to his belief that the medical license had not been properly filed and that the suit was filed "for no other reason".

1. Ex. 1, Hughes May 2, 1979 deposition.

2. The Act pertains to the making of a claim against the Government "knowing such claim to be false, fictitious, or fraudulent."

It is significant that the Department of Justice declined to enter an appearance or to otherwise assume any responsibility for the prosecution of this litigation. This decision was made under 31 U.S.C. § 232 after the United States attorney was furnished with substantially all evidence and information in Hughes' possession. The deposition of plaintiff discloses that he had complained to both the Attorney General and the Governor of Mississippi, in addition to a Mississippi District Attorney, but was unsuccessful in efforts to have a quo warranto proceeding filed against the defendants.

Prior to 1973, § 73–25–13, Miss.Code (1972) provided that every person who receives a license to practice medicine must file it in the office of the Clerk of the Circuit Court of the County in which he resides or practices within sixty (60) days from date of its issuance, otherwise it shall become void. However, § 73–25–13 was amended by the Mississippi Legislature in 1973 and again in 1978. Since 1973, § 73–25–13 has not contained any provision to render a license void merely for late filing. Further, Chapter 319, Laws of 1978, enacted by the Mississippi Legislature prior to the commencement of this action in 1979, amended and modified § 73–25–13 to provide a new deadline for filing licenses. The new deadline was sixty (60) days from March 2, 1978. The purpose of the legislative act was "to provide that anyone *who has not previously filed his license* shall have sixty (60) days after passage of this act within which to file. Section 73–25–13 now simply provides:

> Every person who receives a license to practice medicine must file it in the office of the clerk of the circuit court of the county in which he resides or practices, within sixty (60) days from the date of its issuance. When the license is filed, the clerk shall record the same, with his certificate of the filing thereto attached, in a suitable book to be kept in his office for that purpose, upon the payment by the licensee of the fee provided by law; and, when recorded, he shall deliver the original on demand to the licensee.

It is on alleged prior technicalities of date of filing raised under former § 73–25–13 and its predecessor statutes, prior to the 1973 and 1978 amendments, that plaintiff asserts his claim against defendants.

## II.

### CONCLUSIONS OF LAW

#### 1.

*The False Claims Act Affords No Basis For Plaintiff's Action Where The Defendant Physicians Did Not Knowingly or with Guilty Intent Attempt to Cheat or Defraud the Government*

The False Claims Act provides:

> Any person not in the military or naval forces of the United States, or in the militia called into or actually employed in the service of the United States, who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, ... shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit.

The Supreme Court has consistently admonished that "we must give it (False Claims Act) careful scrutiny." *E. g., United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). While providing an action for civil penalties the Act must be strictly construed because it is, in fact, a part of a criminal statute. *Rainwater v. United States*, 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.3d 996 (1958); *United States v. McNinch*, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958). The Act "... is not only penal, but drastically penal ... so far as it perpetuates the odius and happily

nearly obsolete qui tam action it should be regarded with particular jealousy." *United States ex rel. Brensilber v. Bausch & Lomb Optical Company*, 131 F.2d 545, 547 (2d Cir. 1942), aff'd 320 U.S. 711, 64 S.Ct. 187, 88 L.Ed. 417.

■ The threshold requirement, therefore, is that each defendant's claim against the Government be "knowingly" grounded in fraud. *Marcus v. Hess*, 63 S.Ct. at 384, 87 L.Ed. at 449; *United States ex rel. Weinstein v. Bressler*, 160 F.2d 403 (2d Cir. 1947). Congress limited liability to one making a claim against the Government "knowing such claim to be false, fictitious, or fraudulent," i. e. willfully participating in an attempt to defraud. In the context of this very Act the Fifth Circuit has defined willful to mean "conscious that what he was doing was unlawful." *Corcoran v. United States*, 229 F.2d 295, 299 (5th Cir. 1956).

The Fifth Circuit, in concurrence with all of the courts, has emphasized the essential element of *scienter*, i. e. that the particular individual defendant have personal knowledge of and personal participation in an attempt to cheat the Government. Further, this Circuit, with the support of the overwhelming majority of the courts and with the guidance of the Supreme Court,[3] has restricted the provisions of the Act to claims *grounded in fraud*. In *United States v. Aerodex, Inc.*, 469 F.2d 1003 (5th Cir. 1972), the Court said:

The law is settled in this Circuit that to show a violation of the False Claims Act the evidence must demonstrate "guilty knowledge of a purpose on the part of (the defendant) to cheat the Government," *United States v. Priola*, 272 F.2d 589, 594 (5th Cir. 1959), or "knowledge or guilty intent," *United States v. Ridglea State Bank*, 357 F.2d 495, 498 (5th Cir. 1966). See also *Henry v. United States*, 424 F.2d 677 (5th Cir. 1970). This rule is in accordance with the position adopted by the Ninth Circuit, *United States v. Mead*, 426 F.2d 118 (9th Cir., 1970), the Sixth Circuit, *United States v. Ueber*, 299

F.2d 310 (6th Cir. 1962), and the Second Circuit, *United States ex rel. Brensilber v. Bausch & Lomb Optical Co.*, 131 F.2d 545 (2nd Cir. 1942), aff'd by an equally divided court, 320 U.S. 711, 64 S.Ct. 187, 88 L.Ed. 417 (1943). The Tenth Circuit in *Fleming v. United States*, 336 F.2d 475 (10th Cir. 1964), cert. denied, 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1964), has reached a contrary conclusion.

In *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir. 1975), cert. den. 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47, the Fifth Circuit again pointed out that to come within the purview of the Act the claim must be "grounded in fraud," i. e. there must be "guilty intent". 508 F.2d at 52–3.

In stark contrast to the facts in *Peterson*, this lawsuit contains no foundation whatever for even an inference that any defendant physician had "guilty knowledge" or "guilty intent" of a purpose to cheat the Government.

■ The date of recording technicality on which Hughes attempts to base his case, whether meritorious or not, is far afield from the restricted scope of the drastically penal False Claims Act. After receiving their medical licenses, each defendant has conscientiously engaged in a busy and much needed medical practice for a number of years (for more than 40 years for one defendant physician). There could be no inference of fraud from the mere submission of Medicaid claims for necessary medical services performed in 1977 and 1978. Fraud requires clear and convincing evidence and the presumption is against fraud. *Breeland v. Hide–A–Way Lake, Inc.*, 585 F.2d 716, 721 (5th Cir. 1978); *Grenada Ready–Mix Concrete, Inc. v. Watkins*, 453 F.Supp. 1298, 1309 (N.D.Miss.1978).

■ Summary judgment, while generally invoked with caution, is particularly appropriate where an attempt is made to utilize the False Claims Act absent fraud. For example:

**3.** *E. g., Marcus v. Hess*, 317 U.S. at 544–5, 63 S.Ct. at 384; *United States v. Neifert–White*

*Co.*, 390 U.S. 228, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968).

In *Brensilber v. Bausch & Lomb, supra,* the Second Circuit endorsed summary judgment where the party dealing with the Government was "wrong" but not "fraudulent", saying:

> To subject the defendants to a long harassment by examination and trial upon a certainly empty charge could serve no purpose except to possibly to force them to buy their peace, an extortion against which 31 U.S.C.A. § 232 would not protect them. The action is of precisely the sort which a motion for summary judgment was intended to nip in the bud.

The Supreme Court affirmed.

In *Weinstein v. Bressler, supra,* the same court affirmed summary judgment where there was no real dispute as to what took place and where there were Sherman Act violations but no fraudulent misrepresentations with respect to the defendants' bids for a Government contract. The court explained:

> ... fraud must be proved to sustain a recovery by an informer under the Informer's Act, 31 U.S.C.A. §§ 231–235 ...
>
> .    .    .    .    .
>
> By their bidding agreements defendants may have violated other laws of the United States. Some of the defendants here have indeed pleaded nolo contendere to Sherman Act indictments found against them. Whatever remedies the United States may have outside the Informer's Act, however, are here irrelevant. 160 F.2d at 404, 405–6.

In *United States v. DeWitt,* 265 F.2d 393, 400 (5th Cir. 1959), the Fifth Circuit affirmed summary judgment in favor of a mortgage lender who guaranteed a loan to a veteran who did not then intend to occupy the property as his home. The lender thought it was dealing with a valid transaction.

██ Each defendant physician has done nothing but submit perfectly appropriate Medicaid claims after performing valuable and necessary medical services. Any suggestion of fraud is entirely absent. No court would impose the terrific consequences of the False Claims Act under such circumstances.

### 2.

### Each Defendant Physician is Duly And Legally Licensed to Practice Medicine Under Mississippi Law

██ Even if there is some technical problem with any defendant physician's license, that matter is between the physician and the Mississippi State Board of Health. The False Claims Act is carefully restricted to cases of intentional, deliberate fraud and has no application to unintentional technicalities. Thus summary judgment is mandated here whether or not plaintiff has uncovered some unintentional, non-fraudulent technicality.[4]

Plaintiff, however, is pursuing his technical trail in vain.

First, plaintiff relies on *Conway v. Mississippi State Board of Health,* 252 Miss. 315, 173 So.2d 412 (1965), where the State Board obtained an injunction precluding one Conway from engaging in the practice of medicine *until* he received a new license. Reliance by plaintiff upon *Conway* is misplaced: the licensing question there was raised by the state agency with exclusive licensing power (*Code* § 73–25–1); the State Board had express statutory power for the judicial proceeding (*Code* § 73–51–1); and at that time the failure to timely record rendered the license *void* (*Code* § 73–25–13), and the physician was required to obtain a new license from the Board (*Code* § 73–25–15).

██ Plaintiff has no statutory authority, such as is vested in the State Board of Health, to challenge medical licenses. Only the State Board of Health, or in some instances a state professional association, or

---

**4.** Plaintiff selected the nine defendants "at random" out of nine hundred Mississippi doctors whom he claims had not recorded their licenses within a 60 day period (May 2, 1979 deposition, pp. 12, 99).

the Attorney General,[5] has standing in a license controversy. *Redmond v. State ex rel. Attorney General*, 152 Miss. 54, 118 So. 360 (1928); *Norville v. Mississippi State Medical Ass'n*, 364 So.2d 1084, 1091 (Miss. 1978).

Second, Plaintiff overlooks that Chapter 319, Mississippi Laws of 1978, (prior to the commencement of this action) amended and modified the statute construed in the *Conway* case (§ 73–25–13) to provide a new deadline for filing licenses. The new deadline was 60 days from March 2, 1978. The purpose of the legislative act was "to provide that anyone *who has not previously filed his license* shall have sixty days after passage of this act within which to file."

The deposition of Dr. Puryear and the affidavits of the eight other physicians show their licenses have been filed in accord with law and they obviously come within the legislative deadline.

Third, Plaintiff overlooks that *Code* § 73–25–13 does not now, and since 1973 has not, contained any provision to render a license *void* merely for late filing.

Under the statute in its present form not even the State Board of Health, much less plaintiff with no standing, could argue that a license was *void* due to late filing. The controlling rule of statutory construction is found in *Deposit Guaranty Bank & Trust Company v. Williams*, 193 Miss. 432, 9 So.2d 638 (1942), where the Court said:

> Many decisions in this state have affirmed the Rule, which generally prevails, that the effect of a repealing statute is to abrogate the repealed statute as completely as if it had never been passed, and *that a statute modifying a previous statute has the same effect as though the statute had all the* while *previously existed in the same language as that contained in the modified statute*, unless the repealing or modifying statute contains the saving clause. (Emphasis added)

To the same effect are *McCullen v. Sinclair Refining Co.*, 207 Miss. 71, 41 So.2d 382 (1949); *Stone v. Independent Linen Service Co.*, 212 Miss. 580, 55 So.2d 165 (1951).

Plaintiff, therefore, in attempting to pursue a remedy without the standing to do so, is relying upon a completely abrogated statute and is overlooking the extended legislative deadline for filing.

## III. CONCLUSION

The conclusion is inescapable, there being no genuine issue as to any material fact and plaintiff being precluded by law from any right of recovery, that summary judgment should be entered with respect to the purported claim against each defendant physician. Summary judgment has previously been entered in behalf of Dr. Puryear dismissing plaintiff's suit against him. The above findings of fact and conclusions of law are adopted in support of the Summary Judgment previously granted to Dr. Puryear. The Motions for Summary Judgment in behalf of the eight remaining defendant physicians are well taken and for the foregoing reasons summary judgment will likewise be entered in behalf of the other eight defendant physicians dismissing plaintiff's suit as to each of them with prejudice.

---

**5.** As noted, plaintiff complained to the Attorney General, the District Attorney and the Governor but could not stir up a *quo warranto* proceeding (May 2, 1979 deposition, p. 28).